# CONSTRUCTION AGREEMENT

This Agreement made and entered into as of this 15th day of May, 1989, by and between Echo Bay Exploration Inc., (hereinafter called the "Operator") as agent for the Owners as hereinafter defined and Centennial Development Company, (hereinafter called the "Contractor").

WITNESSETH:

That the Contractor and the Operator, for the considerations hereinafter named, agree as follows:

## ARTICLE 2.1 DEFINITIONS

Wherever the following terms are used, the intent and meaning shall be as follows:

Owners - Echo Bay Exploration Inc. & Coeur Alaska Inc.

Contractor - Centennial Development Company.

Bidder - Person, partnership or corporation submitting a proposal for the performance of the Work covered by the Contract Documents.

Operator's Representative - The authorized representative appointed from time to time by the Operator in accordance with Article 2.8.

Superintendent - The representative and supervisor of the Contractor appointed from time to time by the Contractor in accordance with Article 2.11.

The Work - The Work to be executed in accordance with Article 2.2.

The Contract - Includes the Tender (Section 1.0), signed Construction Agreement (Section 2.0) and any schedules thereto, the Scope of Work (Section 3.0), the Specifications and Drawings (Section 4.0), the Notice of Award of Contract, the Notice to Proceed, and all amendments thereto.

Site - The lands identified in Article 2.2 on, under, in or through which the Work is to be executed or carried out.

Materials - All materials, supplies, and other things to be incorporated into the Work.

Acceptance - The acceptance of the Work by the Operator as provided for in Article 2.6.



EXHIBIT A
Page 1 of 14

Approved - Approved in writing, including subsequent written confirmation of previous verbal approval, and "approval" means approved in writing.

ARTICLE 2.2 THE WORK

The Work shall be performed at the Owner's Kensington Venture Site, located near Juneau, Alaska and will consist of the following:

- Construction of an underground raise, ramp and drifts together with necessary ancillary facilities, including supply of all supervision, labor, equipment, materials, supplies and services except as otherwise specifically provided in Section 3.0, Scope of Work.
- Formal documentation of as-built structures, excavations and installation as set forth in Section 3.0.
- Extra Work items as may be requested in writing by the Operator from time to time, which the Contractor shall perform, subject to the provisions of Article 2.14.

The Contractor shall procure and supply at its own cost all labor, services, materials, machinery, equipment, tools, other items and facilities, transportation and storage, for the purpose of the Work, with the exception only of such services and items set out in Section 3.0, which are to be supplied by the Operator.

No part of this Contract shall be subcontracted without the written approval of the Operator to the identity of the subcontractor and the form and content of the subcontract. All terms of this Contract shall be embodied in all subcontracts. The Contractor shall be directly responsible for the quality and performance of the Work subcontracted, and if any subcontractor shall fail to perform the Work undertaken by him in a manner satisfactory to the Operator, its subcontract shall be immediately terminated by the Contractor upon written notice from the Operator's Representative. Nothing contained herein shall create any contractual relationship between any subcontractor and the Operator.

ARTICLE 2.3 COMMENCEMENT AND COMPLETION

Term

The Contractor shall commence the Work within 20 days after the date hereof and shall complete the Work no later than November 13, 1989. The Contractor shall prosecute the Work in a diligent and workmanlike manner on any schedule it may deem necessary to complete the Work in the allotted time.

ARTICLE 2.4 PRICE

For the performance of the Work specified in this Contract, the Operator agrees to pay the Contractor, in accordance with the terms and conditions of this Contract, and subject to changes in the Work as provided for in Article 2.14 hereof, the amounts prescribed in the Tender, which shall include all applicable federal, state, county and local taxes.

ARTICLE 2.5 PAYMENTS

The Contractor shall be paid monthly on its estimates supported by progress reports, as to work units completed in the previous calendar month or in the case of lump sum items, an estimate of percentage completed in the previous calendar month, submitted by the Contractor and approved by the Operator's Representative, within ten (10) days of the Operator's receipt and approval of the Contractor's estimates.

The Operator may withhold the whole or any part of any payment to such an extent as may be necessary to protect the Operator from loss on account of: (1) defective work not remedied, (2) claims filed or reasonable evidence indicating probable filing of claims, (3) failure of the Contractor to make payments properly to subcontractors, suppliers or employees for materials or labor.

Upon completion and acceptance of the Work by the Operator, and thirty (30) days after all lien rights have expired, the Operator shall pay to the Contractor the balance, if any, due under the Contract, unless at such date the Contractor has not completed the repairs or replacements required pursuant to Article 2.6. No payment made to the Contractor and no partial or entire use or occupancy of the Work by the Operator shall be construed as an acceptance of any Work or Material not in accordance with the Contract.

ARTICLE 2.6 ACCEPTANCE OF THE WORK

When the Contractor considers that it has completed the Work, the Contractor shall give written notice thereof to the Operator and forthwith thereafter the Operator shall inspect the Work and shall, within three (3) days from the date of receipt of such notice, either deliver in writing notice of Acceptance of the Work to the Contractor or specify in writing to the Contractor such defects in workmanship or Materials or which fail to conform to the requirements of the Contract. When the Contractor, at its own cost, has remedied such defects, the provisions of the foregoing shall again apply. Upon delivery of notice of Acceptance of the Work in writing from the Operator to the Contractor, the obligations of the Contractor under the Contract shall be limited to those referred to in Articles 2.7,

2.13, 2.20, 2.21 and 2.23, all of which provisions shall survive Acceptance of the Work.

ARTICLE 2.7 GUARANTIES AND WARRANTIES

Unless otherwise provided herein, the Contractor guarantees the Work for a period of one (1) year from the date of acceptance of the Work by Operator against any defects in workmanship or Materials provided by the Contractor and its subcontractors and suppliers.

ARTICLE 2.8 OPERATOR'S REPRESENTATIVE

The Work shall be performed under the inspection of the authorized Representative of the Operator, whose name and authority shall be set forth in writing to the Contractor by the Operator with the giving of the Notice to Proceed and whose actions shall be deemed to be those of the Operator. The Operator's Representative may be changed from time to time by giving notice in writing to the Contractor.

The Operator's Representative and his assistants at all times shall have safe access to the Work being performed. The Contractor shall provide proper and safe access for inspection of the Work. The Operator agrees to coordinate its accesses and inspections with the Contractor's working schedule so that the delays are minimized.

ARTICLE 2.9 INSPECTION

The Operator's Representative may reject any Work done by the Contractor or Material provided by Contractor which is found to be defective, or not in compliance with the Drawings and Specifications. Any such rejected Work or Material shall be promptly replaced or corrected to meet the Operator's Specifications at no cost to the Operator, and the Contractor shall bear the expense of replacing or repairing all Work or Material destroyed or damaged by such replacement and correction. If the Contractor does not correct such defective Work or Material within a reasonable time, the Operator may do so and charge any or all expense so incurred to the Contractor. If the Operator deems it inexpedient to correct the defect in accordance with the Contract, an equitable deduction from the price shall be made therefore.

ARTICLE 2.10 SAFETY

The Contractor agrees that the prevention of injury to workmen engaged in the Work and to employees and representatives of the Operator and to members of the public is the

responsibility of the Contractor. The Contractor agrees to comply with all laws, regulations, and codes concerning safety as shall be applicable to the Work. When so ordered by the Operator's Representative, the Contractor agrees to stop any part of the Work which the Operator deems unsafe until corrective measures satisfactory to the Operator have been taken, and the Contractor agrees to make no claim for damages growing out of such stoppages. Failure on the part of the Operator to stop unsafe practice shall in no way relieve the Contractor of its responsibility hereunder.

ARTICLE 2.11 SUPERINTENDENCE AND MANNING BY CONTRACTOR

The Contractor shall designate in writing to the Operator a competent Superintendent acceptable to the Operator who shall be present on the Site at all times during progress of the Work, with authority to act on behalf of the Contractor. The Superintendent shall represent the Contractor and all directions, reports and notices given to or by him shall be deemed to be given to or by the Contractor. The Superintendent shall not be changed except with the consent of the Operator, unless the Superintendent proves to be unsatisfactory to the Contractor and ceases to be in its employment.

The Contractor shall employ only competent and reliable employees who shall not be negligent, insubordinate, or inimical to the public interest or that of the Operator. The Contractor shall replace any of its employees, representatives or subcontractors who fail to comply with the Operator's requirements for security, safety, cleanliness or good order of the Site. The Contractor shall at all times comply with all applicable labor laws.

ARTICLE 2.12 USE OF PREMISES

In addition to the areas directly involved in the performance of the Work, the Contractor shall have reasonable access through areas used by the Operator and by other contractors. If so, the Contractor agrees to coordinate these activities with the Operator, subject to reasonable restrictions imposed by the Operator.

The Contractor shall maintain all working areas in a clean, safe and waste-free condition. Discharge of lubricants, fuel, waste and other pollutants onto the ground shall be prevented. Drilling additives must be of a non-toxic variety. All waste material shall be removed and disposed of by the Contractor as directed by the Operator's Representative.

The Contractor agrees that immediately upon completion of the Work and Acceptance by the Operator, it will remove all tools, equipment, debris and rubbish (other than as specifically

provided in Sections 3.0 and 4.0) and expediently quit the premises.

The Contractor and its representatives, employees and subcontractors shall strictly comply with all procedures for safety, security, cleanliness, sanitation, and good order at the Site which are implemented by the Operator, as may be modified from time to time. Failure to comply with this provision could result in the Operator requiring immediate exclusion of the offender from the Site.

## ARTICLE 2.13 PERMITS AND REGULATIONS

The Contractor shall obtain and pay for all necessary permits and licenses pertaining to the Work except as specifically provided for in Section 3.5.3.2 and shall comply with all federal, state, county, and local laws and regulations whether or not provided for by the Drawings and Specifications, without additional charge or expense to the Operator. [Without limiting the foregoing, the Contractor agrees to carry out all provisions of the Contract in full compliance with all laws, rules, regulations and special use permits in existence and to be issued including without limitation those concerning the use of explosives, transportation of explosives, use and disposition of Materials and refuse, and use of the Site and roadways appurtenant thereto.] — specific

## ARTICLE 2.14 CHANGES IN THE WORK

The Operator at any time during the progress of the Work may require additions, alterations or deletions from the Work called for in the Drawings and Specifications. The Price for the Work as prescribed in Section 2.4 and Schedule A of the Tender shall be adjusted up or down by an amount equal to the change in units multiplied by the applicable unit price in the Tender. In the event that there is no unit price for the change contemplated, then the Contractor shall submit a proposed charge adjustment for the change to the Operator, with justification therefore. The Operator shall respond to such a proposed charge adjustment in writing within ~~five (5) days~~ of its receipt. In the event of the Operator's rejection of such proposal, then that portion of the Work being changed will be paid by the Operator at the Contractor's cost for labor and Materials, plus a fee equal to 15% of such cost, or the change shall be eliminated from the Scope of Work at the Operator's discretion.

## ARTICLE 2.15 DRAWINGS AND SPECIFICATIONS

The Contractor will be furnished sufficient copies of Drawings and Specifications for the proper execution of the Work. Anything contained in the Specifications and not shown on the

Drawings or anything shown on the Drawings and not mentioned in the Specifications shall have the same effect as if shown and mentioned in both. If there is any contradiction or ambiguity between the Drawings and Specifications, the Contractor shall bring the fact to the attention of the Operator's Representative and shall obtain his decision in writing as to the true meaning or intention before proceeding with the portion affected.

ARTICLE 2.16 RESPONSIBILITY FOR PROPERTY

The Contractor shall be responsible for damage to, or destruction or loss, however caused, of Materials, tools, equipment and appliances owned by the Contractor or obtained from others by the Contractor or made available by the Operator to the Contractor.

Upon delivery thereof by the Operator to the Contractor for the purpose hereof, as evidenced by the Contractor's receipt therefor, the Contractor shall assume in trust the care, custody and control of tools, equipment and Materials furnished by the Operator pursuant hereto and shall be responsible for damage, loss or destruction thereof, however caused, save and except reasonable wear and tear and save and except damage, loss or destruction caused by the sole negligence of the Operator, its employees or agents, until the installation or consumption thereof in the performance of the Work or the return thereof to the Operator, as evidenced by its receipt therefor.

Although title thereto may have passed to the Operator, the Contractor shall be absolutely responsible for all Materials delivered to it and Work performed at the Site until completion and acceptance of the Work. The Operator shall not be responsible for loss of or damage to the Work or any such Materials until after final acceptance of the Work by the Operator, and upon completion of the Work, the Contractor shall deliver the Work to the Operator complete and undamaged; provided however, that the Contractor shall not be required to restore damaged Work when such damage is caused by the sole negligence of the Operator or any of its employees.

The Contractor shall be responsible, to the full satisfaction of the Operator, for any loss or destruction of or damage to any property of the Operator if such loss or destruction or damage is due to the negligence or willful acts or omissions of the Contractor, its employees, agents, representatives or subcontractors.

ARTICLE 2.17 INSURANCE

Insurance coverage specified herein constitutes the minimum requirements, and said requirements shall in no way lessen or limit the liability of the Contractor under the terms

of the Contract except as specifically provided herein. The Contractor shall procure and maintain, at its own cost and expense, any additional kinds and amounts of insurance that in its judgment may be necessary for its proper protection in the prosecution of the Work.

The Contractor, at its own expense, shall carry and maintain the following insurance in companies acceptable to the Operator, and shall furnish certificates of all such insurance to the Operator before commencement of any Work hereunder:

A. Workmen's compensation and occupational disease disability insurance. The Contractor and its subcontractors shall comply with all requirements of the State of Alaska and shall provide compensation insurance to protect the Contractor, its subcontractors, and the Operator from any and all Workmen's Compensation claim or claims arising from the performance of the Work. Such insurance must cover all employees engaged in the Work.

B. Comprehensive automobile liability insurance covering all owned, hired, or non-owned vehicles used by the Contractor in the performance of the Contract with limits of not less than $300,000 per person and $500,000 per accident for bodily injury and $100,000 per accident for property damage.

C. Comprehensive general liability insurance, including contractual liability covering the terms of the Contract with limits of not less than $1,000,000 per occurrence for bodily injury (including death), and $1,000,000 per occurrence for property damage. No activity reasonably required in the performance of the Work as contemplated in the Contract shall be considered an exclusion for payment of losses arising out of or caused by such activity.

If any of the Work is subcontracted, the Contractor shall require each subcontractor to provide insurance coverages to the extent and in the minimum amounts as set forth above.

If part or all of the Contractor's workmen's compensation liability is to be insured with the State Fund, the Contractor shall furnish the Operator with evidence satisfactory to the Operator that payment of taxes and premiums are not overdue.

<u>ARTICLE 2.18 INDEMNIFICATION</u> liability

The Contractor shall indemnify and save harmless the Operator, the Owners and their employees and agents from any and

all claims, demands, actions and costs whatsoever that may arise out of, directly or indirectly, the Contractor's performance, non-performance or improper performance of its obligations under the Contract or by reason of any matter or thing done, permitted or omitted to be done by the Contractor, its Subcontractors, or its or their employees, or agents, and whether occasioned by negligence or otherwise. Such indemnification shall survive the termination of the Contract. Notwithstanding the foregoing, the Contractor's obligation to indemnify and save harmless the Owners and the Operator, as set out above, shall be reduced to the extent that the claim, demand, action, or cost is attributable to the negligence of the Owners, the Operator or their employees, and agents.

The Owners and the Operator shall not be liable or responsible in any way for any personal injury or property damage of any nature whatsoever that may be suffered or sustained by the Contractor or by any employee, servant or agent of the Contractor in the performance of its obligations under the Contract.

The Operator may withhold from any payments due to the Contractor such sum as the Operator may deem reasonably sufficient to cover any claims for which the Owners or Operator are entitled to an indemnity pursuant to this Article 18.

## ARTICLE 2.19 OWNERS' REPRESENTATIVE AND LIABILITY

Without restricting the Owners' or the Operator's right to assign the Contract or any interest therein, the Owners may from time to time delegate (including the changing of any previous delegation) by written notice to that effect to the Contractor, to any person, firm, corporation, board or agency, any or all of the Owners' rights and powers under the Contract. As of the date of the Contract, the Owners' agent and representative is the Operator and the Contractor shall be entitled to deal with the Operator as agent for the Owners in respect to all matters involving the Work to be performed until receipt of notice to the contrary.

liability

Any liability of the Owners to the Contractor or any third party based upon the Contract shall be several and not joint and several and the liability of each of the Owners shall be limited to the extent of its ownership interest in the Kensington Venture. At present the ownership interest of the Owners is as follows:

| | |
|---|---|
| Echo Bay Exploration Inc. | 50% |
| Coeur Alaska Inc. | 50% |

ARTICLE 2.20 TAXES

The Contractor, for the Price herein provided, hereby accepts and assumes exclusive liability for and shall hold the Operator and Owners harmless against the payment of:

1. All contributions, taxes or premiums which may be payable under the unemployment insurance laws of the federal government and the State of Alaska in respect of Contractor's or subcontractors' employees engaged in the performance of the Work included in the Contract.

2. All sales, use, excise, transportation, privilege, occupational, and other taxes applicable to Materials and equipment furnished by the Contractor for the Work performed hereunder.

ARTICLE 2.21 LIENS

Contractor shall not cause or permit a lien or encumbrance to attach or remain upon the Site, the Work, Owners' Kensington Venture, or any fixture or improvement installed therein, on account of debt for labor, Materials or services furnished to Contractor for operations pursuant to the Contract; provided, however, that Contractor shall not be required to remove any such lien so long as it is contesting, in good faith, the validity or the amount thereof.

When requested by the Operator, the Contractor shall deliver in a form satisfactory to the Owners, its release of liens and similar releases by each subcontractor and each supplier, dated as of a then-current date and covering Work done and Materials furnished to such date, or receipts in lieu of such releases; and a Contractor's statement in writing, under oath, listing the names and addresses of subcontractors, materialmen, suppliers and others who performed work or provided services or Materials for the Work, and the amount owed to each. The final payment shall not become due until the Contractor shall deliver to the Operator complete releases of all liens for or on account of any Work done or Materials or services furnished for the Work, or receipts in full in lieu thereof and an affidavit that the releases and receipts cover all the Work and materials and services for which a lien could be filed; provided, however, that the Contractor may, if any party refuses to furnish a release or receipt in full, furnish a bond satisfactory to the Operator to indemnify it against any and all liens or claims which may at any time be filed or asserted by such party. If, at any time, there shall be evidence of any lien or claim for which, if established, the Owners or the Operator might become liable or which might constitute an encumbrance upon the Site, the Work or the Kensington Venture, and which is attributable to performance by the Contractor, the Owners and the Operator shall have the right

to retain out of any payment then due or thereafter to become due, an amount sufficient to indemnify the Operator completely against such lien or claim. Should there prove to be any such lien or claim after all payments are made, the Contractor shall be liable to the Owners and the Operator for all expenses of discharging such lien or claim, including reasonable legal fees.

## ARTICLE 2.22 TERMINATION OF AGREEMENT

The Operator shall have the right, in its absolute discretion, to terminate the Work and the Contract at any time upon written notice to the Contractor. If such termination shall occur while the Contractor is not in default under the provisions of the Contract, then the Operator shall pay to the Contractor:

a. An amount, if any, which will give to the Contractor total payments for Work to date of termination which represent a fair proportion of the total Price prescribed herein, as such Price may have been adjusted pursuant to Article 2.14, taking into account the portion remaining to be completed, and the proportion of the specified time for completion which has been consumed; plus

b. Any additional actual direct costs necessarily incurred by the Contractor because of such termination or which result from binding commitments concerning the Work made by the Contractor with others before such termination.

REMEDIES

If the Contractor, at any time, shall refuse, fail or neglect to supply a sufficient number of skilled workmen, Materials, tools or equipment of proper quality and quantity, or shall fail in the performance of any of its obligations under the Contract, or is behind schedule because of lack of diligent prosecution of the Work by the Contractor, or shall fail to make prompt payments to subcontractors or others for materials or labor, and shall within three (3) days after receipt of written notice from the Operator, fail to cure such defaults; or if a petition in bankruptcy shall be filed by or against the Contractor or the Contractor shall become insolvent, the Operator, in any such event, shall have the right to terminate the Contract. In the event of such termination, the Operator, in addition to any other rights and remedies it may have, may take possession, for the purpose of completing the Work, of all Materials, tools and equipment on the Site, and employ any other person or persons to finish the Work. In case of such termination, the Contractor shall not be entitled to receive any further payment under the Contract until the Work shall be completed, at which time, if the unpaid balance of the amount to be paid under the Contract shall exceed the expense incurred by the Operator in finishing the Work, such excess shall be paid to the Contractor; but if such expense shall exceed such unpaid balance, then the Contractor shall pay the difference to the

Operator. Failure of the Operator to exercise any of the rights given it under this paragraph shall not excuse the Contractor from compliance with the provisions of the Contract, nor prejudice the rights of the Operator to recover damages for any such default.

As soon as practicable after termination of the Contract by the Operator, the Contractor shall execute and deliver all such papers and take all such steps, including the legal assignment of its contractual rights, as the Operator may reasonably require, for the purpose of vesting in it the rights and benefits of the Contractor under all agreements with subcontractors, suppliers, materialmen and others relating to the Work.

ARTICLE 2.23 MISCELLANEOUS

The Contractor shall be deemed in respect to all the Work herein provided for to be an independent contractor. Any employees, agents, and representatives used by it in connection with the Work shall be deemed to be its employees and not in any sense employees, agents or representatives of the Operator.

Any failure by the Operator at any time, or from time to time, to enforce or require the strict keeping and performance of any of the terms or conditions of the Contract shall not affect or impair such terms or conditions in any way, or the right of the Operator at any time to avail itself of such remedies as it may have for any breach or breaches of such terms or conditions.

The title to all Work completed and in the course of construction at the Site and to all Materials which are delivered to and stored at the Site which are intended to be incorporated in the Work shall be in the Operator.

compliance w laws

The Contractor shall conduct all operations and maintain all activities hereunder in a good, prudent and workman-like manner, in accordance with normal, accepted mining industry standards, and in strict compliance with all applicable governmental laws, regulations, licenses and permits, and bonds and sureties.

The Operator shall have the right to inspect all incoming equipment and Materials to ensure that all items are in the condition and quantities specified in this Contract.

confidentiality

The Contractor, unless otherwise authorized in writing by the Operator, shall not disclose or permit the disclosure to any other party, the nature, character, location, findings, or results of Contractor's operations under the Contract, and Contractor shall require all its employees and subcontractors engaged in any part of the work under the Contract to likewise refrain from disclosing any such information. Should Contractor fail to strictly comply with the provisions of this paragraph,

the Operator, at its option, may terminate the Contract, which remedy is in addition to any other remedy provided by law.

No changes in the provisions of the Contract, including changes in the Work authorized under Article 2.14, shall be effective unless made by formal amendments executed in the same manner as this construction agreement.

The Contract shall be binding upon and shall inure to the benefit of the parties hereto, their successors and assigns, but the Contractor may not assign the Contract or any part thereof or any part of the Work to be done hereunder, nor may the Contractor assign any monies due or to become due to it, hereunder without prior written consent of the Operator.

Any notice to be given by either party to the other under the Contract shall be deemed to be given if in writing, personally delivered to Operator's Representative or Contractor's Superintendent, as applicable, or sent by United States registered mail with return receipt requested, postage prepaid, addressed as follows:

If to Operator:

Echo Bay Exploration Inc.
3300 Manulife Place
10180 - 101 Street
Edmonton, Alberta, Canada
T5J 3S4

Attn: R. H. Bennett,
Vice President, Development

with a copy to:

Echo Bay Exploration Inc.
Capital Plaza, Suite 102
8585 Old Dairy Road
Juneau, Alaska, USA 99801

Attn: G. B. Sparks
Director of Development, Alaska Region

If to Contractor:
Centennial Development Company
P. O. Box 151065
3808 South West Temple
Salt Lake City, Utah, USA 84115

Attn: Dave Bovee
President

The address of either party designated above may be changed from time to time by written notice to the other party.

The Contract will be construed and applied according to the laws of the State of Alaska.

IN WITNESS WHEREOF the parties have executed this construction agreement as of the day and year first above written.

[signature]
VICE PRESIDENT.

ECHO BAY EXPLORATION INC.

By: [signature]
CONTRACTOR

CENTENNIAL DEVELOPMENT COMPANY

By: [signature]